1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KENNETH A. GRIFFIN,                     No.  2:10-cv-2525 MCE AC P

12               Plaintiff,

13        v.                                 ORDER AND FINDINGS &
                                             RECOMMENDATIONS
14   J. CLARK KELSO, et al.,

15               Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment.  ECF

19   No. 62.

20        I.      Procedural History

21        This case is on remand from the Ninth Circuit on plaintiff's claims against defendants Bal,

22   Sahota, Nangalama, Masuret, and Woods.  ECF No. 50.  Plaintiff's claims against defendants

23   were previously dismissed for failure to exhaust administrative remedies.  ECF Nos. 37, 42.  On

24   appeal, the Ninth Circuit found that the motion to dismiss was granted in error because plaintiff

25   claimed that he was satisfied with the administrative relief he received at the first and second

26   levels of review, but held that on remand defendants could contest whether plaintiff was actually

27   satisfied, using the procedures set forth in Albino v. Baca, 747 F.3d 1162, 1169-71 (9th Cir.

28   2014) (en banc).  ECF No. 50 at 2-3.  Defendants have now filed a motion for summary judgment

                                             1

1  arguing that plaintiff was not in fact satisfied by the relief he received and was therefore not

2  excused from properly completing the grievance process.  ECF No. 62.

3      II.    <u>Plaintiff's Allegations</u>

4        Plaintiff alleges that since approximately March 2008, he has suffered from several

5  serious medical conditions including a degenerative hip condition, mobility issues related to his

6  right knee, osteoarthritis, and asthma.  ECF No. 1 at 12, ¶ 16.  He also alleges that his right elbow

7  is "STUCK at a 90° angle" as the result of a failed surgery in 2009.  <u>Id.</u>  He requires daily

8  physical therapy to combat his deteriorating mobility and constant nursing care because he is

9  unable to complete basic daily functions such as dressing, grooming, and cleaning himself.  <u>Id.</u>

10  He alleges that defendants are aware of his serious medical needs and have either denied or

11  delayed his receipt of proper treatment and housing.  <u>Id.</u> at 4, 12-14, ¶¶ 2-6, 16-21.

12      III.    <u>Motion for Summary Judgment</u>

13      A.    <u>Defendants' Motion</u>

14        In their motion for summary judgment, defendants argue that it is undisputed that

15  plaintiff's third level appeal was untimely.  ECF No. 62 at 7.  They further argue that plaintiff is

16  not excused from his failure to properly exhaust his administrative remedies because he was not

17  in fact satisfied by the partial relief he received at the first and second levels of review.  <u>Id.</u> at 7-8.

18      B.    <u>Plaintiff's Response</u>

19        At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

20  Procedure 56(c)(1), which requires that "a party asserting that a fact . . . is genuinely disputed

21  must support the assertion by: citing to particular parts of materials in the record . . . or showing

22  that the materials cited do not establish the absence . . . of a genuine dispute . . . ."  Plaintiff has

23  also failed to file a separate document disputing defendants' statement of undisputed facts, as

24  required by Local Rule 260(b).

25        However, it is well-established that the pleadings of pro se litigants are held to "less

26  stringent standards than formal pleadings drafted by lawyers."  <u>Haines v. Kerner</u>, 404 U.S. 519,

27  520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of

28  procedure that govern other litigants."  <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987),

1   overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).

2   However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"

3   and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as

4   "limited access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d

5   1362, 1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard

6   of "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

7       The court is mindful of the Ninth Circuit's more overarching caution in this context, as

8   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

9   pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

10  611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its

11  entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However,

12  only those assertions in the opposition which have evidentiary support in the record will be

13  considered.

14      In his response, plaintiff asserts that he was satisfied with the relief he was promised

15  through the appeals process, and that it was the failure to follow through on the promised relief

16  that dissatisfied him.  ECF No. 64.  In his "rebuttal" to defendants' reply, plaintiff seeks leave to

17  amend the complaint to make his allegations under the Americans with Disabilities Act (ADA) on

18  the grounds that he is a disabled person within the meaning of the ADA and that the ADA

19  excuses the exhaustion requirement.  ECF No. 66.

20      IV.    Legal Standards for Summary Judgment

21      Summary judgment is appropriate when the moving party "shows that there is no genuine

22  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

23  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

24  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

25  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

26  moving party may accomplish this by "citing to particular parts of materials in the record,

27  including depositions, documents, electronically stored information, affidavits or declarations,

28  stipulations (including those made for purposes of the motion only), admission, interrogatory

3

1    answers, or other materials" or by showing that such materials "do not establish the absence or

2    presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

3    support the fact." Fed. R. Civ. P. 56(c)(1).

4          "Where the non-moving party bears the burden of proof at trial, the moving party need

5    only prove that there is an absence of evidence to support the non-moving party's case." Oracle

6    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

7    Indeed, summary judgment should be entered, "after adequate time for discovery and upon

8    motion, against a party who fails to make a showing sufficient to establish the existence of an

9    element essential to that party's case, and on which that party will bear the burden of proof at

10   trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

11   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

12   a circumstance, summary judgment should "be granted so long as whatever is before the district

13   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

14   56(c), is satisfied." Id.

15         If the moving party meets its initial responsibility, the burden then shifts to the opposing

16   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

17   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

18   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

19   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

20   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

21   Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

22   fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

23   Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

24   809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

25   reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

26         In the endeavor to establish the existence of a factual dispute, the opposing party need not

27   establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed

28   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

4

1    truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities

2    Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the

3    pleadings and to assess the proof in order to see whether there is a genuine need for trial."

4    Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

5          "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

6    court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

7    v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is

8    the opposing party's obligation to produce a factual predicate from which the inference may be

9    drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

10    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

11    some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

12    omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

13    non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

14    U.S. at 289).

15          On October 2, 2015, defendants served plaintiff with notice of the requirements for

16    opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 62-3.

17    See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952,

18    960 (9th Cir. 1998) (movant may provide notice) (en banc).

19       V.     Legal Standards for Exhaustion

20          Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

21    subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Under the PLRA,

22    "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

23    any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

24    such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v.

25    Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

26    seeking redress for prison circumstances or occurrences"). "The PLRA mandates that inmates

27    exhaust all available administrative remedies before filing 'any suit challenging prison

28    conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162,

1  1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

2      Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones

3  v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

4  available administrative remedy, and that the prisoner did not exhaust that available remedy."

5  Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir.

6  1996)).  "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'"

7  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original).  Therefore, the

8  defendant must produce evidence showing that a remedy is available "as a practical matter," that

9  is, "it must be capable of use; at hand."  Albino, 747 F.3d at 1171 (citations and internal

10  quotations marks omitted).

11      As long as some potential remedy remained available through the administrative appeals

12  process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies.

13  Booth v. Churner, 532 U.S. 731, 741 (2001); Brown, 422 F.3d at 936-37.  However, "[a]n inmate

14  has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to

15  exhaust his administrative remedies.  Nor is it the prisoner's responsibility to ensure that prison

16  officials actually provide the relief that they have promised."  Harvey v. Jordan, 605 F.3d 681,

17  685 (9th Cir. 2010) (citation omitted).

18      When the district court concludes that the prisoner has not exhausted administrative

19  remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt v.

20  Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d at

21  1168.

22      VI.   Undisputed Material Facts

23      The facts in this case are largely undisputed.  The parties agree that plaintiff pursued an

24  appeal related to the claims in the complaint, and they agree on the timeline for that appeal as set

25  forth below.

26      At all times relevant to the complaint, plaintiff was a prisoner in custody at the California

27  State Prison, Sacramento.  ECF No. 1 at 8-10, ¶¶ 5, 7-11; Defendants' Undisputed Statement of

28  Facts ("DSUF") (ECF No. 62-1) ¶ 1.  On April 29, 2009, plaintiff submitted a first level health

6

care appeal related to his claims against defendants. ECF No. 1 at 14, 28, ¶ 21; DSUF ¶ 2. The

appeal requested that plaintiff "be intervie[w]ed by C.M.O. Sahota or someone in a supervisory

position, so that the proper chronos [could] be placed in [his] Medical file in order for [him] to be

immediately transfer[r]ed to a Medical Facility CMF or CMC." ECF No. 1 at 28; DSUF ¶ 3. On

May 11, 2009, plaintiff was sent a notice informing him that his appeal had been assigned to the

Health Care Appeals Office for a first level response. ECF No. 1 at 32; DSUF ¶ 4.

On May 13, 2009, plaintiff was seen by NP Bakewell, who completed a Disability

Placement Program Verification (CDC 1845); a chrono for a bottom bunk, wooden cane, and

mobility vest; and requested a transfer for plaintiff. ECF No. 1 at 33, 36, 40-41. The CDC 1845

and chrono were approved on May 15, 2009, but it does not appear that they were placed in

plaintiff's medical file until the July 24, 2009 response to his second level appeal. Id. at 36-37;

40-41.

A response to plaintiff's first level appeal was issued on June 22, 2009, and the appeal

was returned to plaintiff on June 30, 2009. Id. at 29, 33-34; DSUF ¶¶ 5-6. During the interview,

plaintiff requested an immediate transfer to a medical facility; daily physical therapy and a person

to assist him once he arrived at the facility; and to be seen by an orthopedic specialist. ECF No. 1

at 33; DSUF ¶ 5. The first level appeal was partially granted on the grounds that plaintiff had an

1845 mobility impairment request and a transfer request pending. ECF No. 1 at 33; DSUF ¶ 5.

The requests for physical therapy and a referral to an orthopedic specialist were to be determined

based on the outcome of the mobility impairment request. ECF No. 1 at 33; DSUF ¶ 5.

On July 12, 2009, plaintiff filed a second level appeal that stated:

> Dissatisfied, it has been three months since the 1845 has been
> requested and nothing has been accomplished, furthermore as of 7-
> 8-09 there is no record of an 1845 request in my medical file. I was
> told by my counselor CCI Lynch that as soon as an 1845 is
> approved I will be transfer[r]ed to a medical facility. I also have
> not been seen by the CMO as requested plus my ADA appeal was
> not processed. I have been beyond patient and all medical staff
> knows I do not belong here at SAC IV and have the power to have
> me moved immediately this is not a custody issue this is a medical
> issue. With every day that passes CMO Sahota her supervisor and
> all medical staff here are guilty of deliberate indifference, which is

7

> evident by the amount of time it is taking to get this transfer done
> and this appeal being assigned to Dr. A. Nangalama who cannot
> approve a medical transfer. See CA P.C. 6055, section 6102(d).

ECF No. 1 at 29, 38. A response to the second level appeal was issued on July 24, 2009, and the appeal was returned to plaintiff on August 5, 2009. ECF No. 1 at 29, 35-37; DSUF ¶¶ 9-10. The response partially granted plaintiff's appeal and found that plaintiff's chrono and CDC 1845 had been approved on May 15, 2009, but had never been placed in his medical file. ECF No. 1 at 35-37. The response stated that the documents would be located and placed in plaintiff's file that same day and that it was not necessary for plaintiff to see the Chief Medical Officer because his chrono and CDC 1845 had already been approved. Id. at 37.

On November 17, 2009, plaintiff submitted a third level appeal that stated the following:

> I was initially satisfied with the partial granting of my medical
> appeal 1st level on 6-22-09 & 2nd level on 7-24-09 although the
> 1845 was done incorrectly, however had the 1845 been done over
> correctly and the CSR approved the medical transfer to CMF or
> CMC I would not be dissatisfied, so I am RE-INSTATING the
> appeal as if the action was denied 100% because NO ACTION
> TRANSPIRED WHATSOEVER, since the partial granting. On the
> 1845 section C # 3 was the correct box to check for my condition
> supported by my medical file and need for constant care and not
> just a disability cell. Pluus [sic] I was never put up for a medical
> transfer and no action at all transpired. ( see action requested on
> initial ap[p]eal I was denied an interview with C.M.O. Sahota, but
> granted medical transfer to CMF or CMC and nothing has been
> done which is the same as the appeal being denied 100%.

Id. at 29, 31. The third level appeal was rejected as untimely on December 30, 2009. Id. at 27; DSUF ¶ 12.

VII.   Discussion

In reversing the dismissal for non-exhaustion of the claims at issue, the Ninth Circuit relied on Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010), and found that plaintiff's claim that he was satisfied with the partial grants of his first and second level appeals ended his obligation to exhaust his administrative appeals. ECF No. 50 at 2-3. However, in remanding the case, the Ninth Circuit gave defendants leave to contest whether plaintiff had actually been satisfied by the partial grants. Id. at 3.

8

1       In <u>Harvey</u>, the plaintiff filed a grievance alleging "that he was denied due process in

2 connection with a disciplinary charge" and that "[p]rison officials failed to hold a hearing on the

3 charge within the time allotted by prison rules." 605 F.3d at 683. The plaintiff then "filed a

4 grievance complaining about the delay and requesting access to [a] videotape," which prison

5 officials granted. <u>Id.</u> "The decision was labeled a partial grant of the grievance because [the

6 plaintiff] had stated that in the alternative he requested that the charge be dismissed." <u>Id.</u> Five

7 months later, the plaintiff complained that he still had not been given the opportunity to view the

8 videotape or been given a hearing. <u>Id.</u> "The prison officials construed that complaint as an

9 appeal of their prior decision, and rejected it as untimely." <u>Id.</u> The Ninth Circuit explained that

10 "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him,

11 in order to exhaust his administrative remedies." <u>Id.</u> at 685. The subsequent complaint was

12 deemed a "reminder" grievance that "cannot reasonably be construed as an appeal of the decision

13 granting [the plaintiff] a hearing." <u>Id.</u>

14       In their motion for summary judgment, defendants argue that this case is distinguishable

15 from <u>Harvey</u> because plaintiff was not granted any of the relief that he requested and because he

16 admitted that he was "dissatisfied." ECF No. 62 at 7-8.

17       With respect to defendants' argument that plaintiff could not have been satisfied because

18 he specifically stated that he was "dissatisfied," it takes plaintiff's statement out of context.

19 Plaintiff stated that he was dissatisfied that it had been three months[1] since his CDC 1845 request

20 had been completed, there was no record of it in his file, and he was told he would be transferred

21 as soon as the request was approved. <u>Id.</u> at 29, 38. This indicates not that plaintiff was unhappy

22 with the promised relief, but with the failure to effectuate the promised relief. Plaintiff also

23 expressed frustration at how long it was taking "to get this transfer done," as though the decision

24 to transfer him had already been made. <u>Id.</u> at 38. Defendants' argument is further undercut by

25 plaintiff's third level appeal, which also expressed dissatisfaction with the amount of time it was

26

27 _____

[1] Though the appeal states it had been three months since the CDC 1845 request was made, it
28 was only two months. The evaluation by NP Bakewell took place on May 13, 2009, and plaintiff
submitted his second level appeal on July 12, 2009. ECF No. 1 at 29, 40-41.

1   taking to provide the promised relief and stated that plaintiff was "initially satisfied with the

2   partial granting" of his first and second level appeals, but that the failure to take any action

3   effectively constituted a denial of the appeal.  Id. at 29, 31.  Considered in its proper context,

4   plaintiff's statement of dissatisfaction does not mean that he was dissatisfied with the relief

5   promised.

6          As for the relief plaintiff sought, the first level appeal requested that plaintiff "be

7   intervie[w]ed by C.M.O. Sahota or someone in a supervisory position, so that the proper chronos

8   [could] be placed in [his] Medical file in order for [him] to be immediately transfer[r]ed to a

9   Medical Facility CMF or CMC."  ECF No. 1 at 28.  In arguing that plaintiff was not granted any

10  of the requested relief, defendants focus on the request for an interview, while completely

11  ignoring the fact that the interview was a means to fulfilling plaintiff's underlying substantive

12  request.  ECF No. 62 at 8.  Plaintiff clearly states that he wanted an interview with "C.M.O.

13  Sahota or someone in a supervisory position" *for the purpose of obtaining chronos that would*

14  *allow him to be transferred to a medical facility*.  ECF No. 1 at 28.  He was not seeking an

15  interview with defendant Sahota or a supervisor just to have an interview, but in order to obtain

16  specific relief.  Id.  Plaintiff's second level appeal further indicates that the request to interview

17  with defendant Sahota or a supervisor was due to plaintiff's belief that he required an interview

18  with these individuals because they were the ones who had authority to approve his request.  See

19  id. at 38 (complaining that Sahota was delaying in getting the transfer completed and that the

20  appeal was assigned to Dr. Nangalama who did not have authority to approve a medical transfer).

21          Both the completed chrono and the response to plaintiff's second level appeal demonstrate

22  that plaintiff's request for a chrono was granted.[2]  Id. at 33, 36-37, 41.  Since defendant Sahota

23  was the one who approved plaintiff's chrono and CDC 1845[3] (id. at 37, 40-41), plaintiff was

24  clearly not required to be seen by Sahota in order to have his requested relief granted.  The

25  _____

26  [2]  Had the documentation been properly placed into plaintiff's medical file, the first level appeal
    would have likely reflected the same, instead of incorrectly telling plaintiff that the request was
27  still pending.  ECF No. 1 at 33.
    [3]  Plaintiff's second level appeal states that he was told he would be transferred once the CDC
28  1845 was approved.  ECF No. 1 at 29.

1   argument that plaintiff could not be satisfied with any relief he obtained because it was not

2   accomplished through an interview with Sahota or a supervisor, as he appeared to incorrectly

3   believe, is untenable.

4        With respect to the portion of the request that sought a transfer, the first level response

5   plaintiff received verified that a transfer request was pending.  Id. at 33.  Plaintiff's second level

6   appeal then stated that he "was told by [his] counselor CCI Lynch that as soon as an 1845 is

7   approved [he would] be transfer[r]ed to a medical facility" (id. at 29, 38) and the second level

8   response stated that plaintiff's CDC 1845 had been approved (id. at 36).  So in response to his

9   appeal, plaintiff was told that a transfer request was pending and that once his CDC 1845 was

10  approved, he would get the transfer that he had requested.  Then he was told that his CDC 1845

11  had already been approved, but for unknown reasons had not yet been placed in his file.  Id. at 36-

12  37.  Nothing in either response disputes plaintiff's statement that he had been told that an

13  approval of the CDC 1845 was synonymous with his transfer request being granted.  Id.  If

14  anything, the acknowledgement that the CDC 1845 had been approved but not yet placed in

15  plaintiff's file would have explained to plaintiff why his transfer had not yet taken place, rather

16  than acting as a notification that his request had not actually been approved.

17        The evidence before the court demonstrates that regardless of whether plaintiff was

18  actually approved for a transfer, the responses that he received indicated that he had been.  Id. at

19  29, 31, 33, 36-38.  To the extent defendants are arguing that plaintiff was never actually granted a

20  transfer, they have not offered evidence of when prison officials clarified the misinformation and

21  so are unable to show when plaintiff should have understood his appeal was denied and

22  proceeded to submit his third level appeal.[4]  Nor have they offered evidence showing that plaintiff

23  could not have believed his request had been granted based upon the information he received.

24  The court therefore finds that (1) plaintiff was satisfied by the relief that he was led to believe he

25  had been granted, and (2) that to the extent he had not actually been granted the relief he sought,

26

27  ――――――――――――――
    [4]  The court notes that plaintiff's third level appeal indicates that at some point he was notified
    that he would not be transferred to a medical facility, but that he believed it was due to his
28  paperwork being filled out incorrectly.  ECF No. 1 at 29, 31.

1    his delay in proceeding to his third level appeal was excused by the misunderstanding perpetuated

2    by the responses he received from prison officials.  See Nunez v Duncan, 591 F.3d 1217, 1226

3    (9th Cir. 2010) (exhaustion excused where prisoner was unable to timely proceed to next level

4    because the warden mistakenly told him that he required a copy of a policy to proceed and no one

5    corrected the mistake while prisoner was attempting to obtain it).  Furthermore, the fact that the

6    transfer was not done "immediately" does not mean that plaintiff was not satisfied with the relief

7    he was purportedly promised, namely that he would be transferred once his CDC 1845 was

8    approved.  See Coats v. Fox, 481 F. App'x 390, 391 (9th Cir. 2012) (prisoner's request to

9    immediately begin Hepatitis C treatment was satisfied by response that he would receive

10   treatment once "he reached a mainline facility and that he would be transferred as soon as

11   possible").

12        With respect to plaintiff's requests to receive daily physical therapy, someone to assist

13   him with his daily activities, and a referral to an orthopedic specialist, which he made during the

14   appeal interview, these requests were not denied outright.  Id. at 33.  The response states that they

15   would be determined upon the outcome of the CDC 1845 (id.), which was approved (id. at 36).

16   Moreover, as defendants point out, plaintiff's request for a transfer was the "gravamen of his

17   claims" (ECF No. 62 at 8) and, as discussed above, the court finds that plaintiff was satisfied as to

18   that request.  The fact that his requests for physical therapy, an assistant, and a referral were not

19   explicitly granted does not mean that plaintiff was not satisfied by the promise of a transfer and

20   further evaluation of those requests and defendants offer no evidence that he was not satisfied.

21        The court also notes that plaintiff requested physical therapy and an assistant *to follow* his

22   transfer to a medical facility; access to these services was a substantial basis for his request to be

23   transferred.  ECF No. 1 at 30, 33.  Since these were the main reasons plaintiff was requesting to

24   be transferred to a medical facility, it stands to reason that he would expect to obtain these

25   services once he was transferred regardless of whether the requests were explicitly granted by the

26   appeal.  The court further notes that the approved CDC 1845 specifies that plaintiff required

27   assistance with some of his daily living activities (id. at 40), indicating that the request for

28   assistance had in fact been granted.

1    For these reasons, the court finds that plaintiff was satisfied with the responses to his first

2  and second level appeals and was therefore not required to proceed to the third level.  Defendants'

3  motion for summary judgment should therefore be denied.

4    VIII.    Motion to Amend

5    In his "rebuttal," which is actually an unauthorized surreply, plaintiff requests leave to

6  amend the complaint to bring his claims under the ADA and thus circumvent the exhaustion

7  requirement.  ECF No. 66.  This request will be denied for several reasons.

8    First, plaintiff has not attached a copy of the proposed amended complaint as required by

9  Local Rule 137(c).

10    Second, contrary to plaintiff's assertion, he is required to exhaust his administrative

11  remedies for claims brought under the ADA, so amending his complaint would not change the

12  exhaustion requirement.  While it is true that claims brought by non-prisoners under Title II of the

13  ADA do not typically require the exhaustion of administrative remedies prior to filing suit,

14  O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1061 (9th Cir. 2007) (citation omitted), the

15  PLRA requires the exhaustion of administrative remedies for claims brought "under section 1983

16  of this title, *or any other Federal law*," 42 U.S.C. § 1997e(a) (emphasis added).  The ADA does

17  not create an exception to the PLRA's requirements, and the Ninth Circuit has held that "the plain

18  language of § 1997e(a) and relevant Supreme Court authority require prisoners bringing ADA

19  and Rehabilitation Act claims to exhaust those claims through available administrative remedies

20  before filing suit."  O'Guinn, 502 F.2d at 1061-62.[5]

21    Third, since plaintiff does not appear to allege that he was denied proper medical care

22  *because of* his disability, it does not appear that he would be able to state a cognizable claim.  See

23  Simmons v. Navajo County, 609 F.3d 1011, 1021 (9th Cir. 2010) (denial of benefit or service

24  must be because of plaintiff's disability) (quoting McGary v. City of Portland, 386 F.3d 1259,

25  1265 (9th Cir. 2004)).

26

27  [5]  Even if the rule were otherwise, plaintiff would not need to include an ADA claim in order to
circumvent the exhaustion requirement and pursue relief for his alleged injuries.  For the reasons
28  explained above, the exhaustion requirement does not bar his present constitutional claims.

13

1    For these reasons, plaintiff's motion for leave to amend will be denied.

2        IX.    Summary

3        The court finds that plaintiff was satisfied by the first and second level appeal responses

4    and recommends that defendants' motion for summary judgment be denied.

5        Plaintiff's request for leave to amend the complaint is denied because (1) he has not

6    provided a copy of the proposed amended complaint, (2) the PLRA requires prisoners to exhaust

7    their administrative remedies for ADA claims amending the complaint to bring claims under the

8    ADA would not change the exhaustion requirement, and (3) it does not look like plaintiff has an

9    ADA claim because he does not claim that he was denied a benefit or service because of his

10   disability.

11       IT IS HEREBY ORDERED that plaintiff's motion for leave to amend the complaint (ECF

12   No. 66) is denied.

13       IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment

14   (ECF No. 62) be denied.

15       These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17   after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

20   objections shall be served and filed within fourteen days after service of the objections.  The

21   parties are advised that failure to file objections within the specified time may waive the right to

22   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23   DATED: May 20, 2016

24   _____

25   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

26

27

28

                                      14