UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH A. GRIFFIN, | No. 2:10-cv-2525 MCE AC P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| J. CLARK KELSO, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment. ECF No. 75. The motion came before the court on January 18, 2017. ECF No. 91. Plaintiff's counsel failed to appear at the hearing and the motion was therefore submitted on the papers without oral argument. Id.

I. Procedural History

This case is on remand from the Ninth Circuit on plaintiff's claims against defendants Bal, Sahota, Nangalama, Masuret, and Woods. ECF No. 50. Plaintiff's claims against these defendants were previously dismissed for failure to exhaust administrative remedies. ECF Nos. 37, 42. On appeal, the Ninth Circuit found that Harvey v. Jordan, 605 F.3d 681 (9th Cir. 2010), applied and that the motion to dismiss was granted in error because plaintiff claimed that he was satisfied with the administrative relief he received at the first and second levels of review. The

1

court of appeals held that on remand defendants could contest whether plaintiff was actually satisfied, using the procedures set forth in Albino v. Baca, 747 F.3d 1162, 1169-71 (9th Cir. 2014) (en banc). ECF No. 50 at 2-3.

On remand, defendants filed a motion for summary judgment arguing that plaintiff was not in fact satisfied by the relief he received and was therefore not excused from properly completing the grievance process. ECF No. 62. Findings and Recommendations were issued denying the motion for summary judgment on the ground that plaintiff was satisfied by the relief he was purportedly granted. ECF No. 68. After defendants filed their objections, the Supreme Court issued its opinion in Ross v. Blake, 136 S. Ct. 1850 (2016), and defendants requested and were given leave to file supplemental objections. ECF Nos. 70, 71. Upon consideration of defendants' supplemental objections, the original motion for summary judgment and the Findings and Recommendations were vacated and defendants were given an opportunity to file another motion for summary judgment that briefed the issues of (1) plaintiff's satisfaction; (2) how the decision in Ross impacts the satisfaction exception set forth in Harvey; and (3) whether plaintiff properly exhausted the grievance process, including whether his third-level appeal was properly rejected as untimely.[1] ECF No. 74. Defendants proceeded to file the motion for summary judgment which is now before the court. ECF No. 75.

II.     Plaintiff's Allegations

Plaintiff alleges that since approximately March 2008, he has suffered from several serious medical conditions including a degenerative hip condition, mobility issues related to his right knee, osteoarthritis, and asthma. ECF No. 1 at 12, ¶ 16. He also alleges that his right elbow is "STUCK at a 90° angle" as the result of a failed surgery in 2009. Id. He requires daily physical therapy to combat his deteriorating mobility and constant nursing care because he is unable to complete basic daily functions such as dressing, grooming, and cleaning himself. Id. He alleges that defendants are aware of his serious medical needs and have either denied or

---

[1] The issue of timeliness was previously briefed in a motion to dismiss, which is no longer proper. Since the timeliness of the third-level appeal was not reached by the Ninth Circuit and was potentially at issue again, defendants were given the opportunity to brief the issue in their motion for summary judgment.

delayed his receipt of proper treatment and housing. Id. at 4, 12-14, ¶¶ 2-6, 16-21.

    III.    Motion for Summary Judgment

        A.    Defendants' Motion

In their motion for summary judgment, defendants contend it is undisputed that plaintiff's third level appeal was untimely. ECF No. 75 at 8. They further argue that Harvey constituted an "extra-textual" exception to the exhaustion requirement, and was therefore overruled by the Supreme Court's opinion in Ross. Id. at 9-11. Finally, defendants argue that even if Harvey is still valid, it is not applicable in this case because plaintiff was not in fact satisfied by the partial relief he received at the first and second levels of review. Id. at 11-12.

        B.    Plaintiff's Response

Plaintiff opposes the motion for summary judgment on the grounds that Harvey is still applicable and plaintiff was in fact satisfied by the partial relief he received. ECF No. 83 at 4-7. He further argues that his third-level appeal was not untimely and that if it was untimely, any untimeliness was the result of misrepresentations by prison staff. Id. at 8.

    IV.    Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle

Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the

4

court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

V. Legal Standards for Exhaustion

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross, 136 S. Ct. at 1857 (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204, 216. "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citations and internal quotations marks omitted).

"[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 136 S. Ct. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."); Brown, 422 F.3d at 936-37. The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d at 1168.

VI.     California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in California regulations. In 2009, those regulations allowed prisoners to "appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2009).

At the time plaintiff was proceeding through the appeals process, it was comprised of one informal level and three formal levels. Id., § 3084.5. The second formal level was "for review of appeals denied at first level or for which first level [was] otherwise waived by [the] regulations." Id., § 3084.5(c). The third formal level was "for review of appeals not resolved at second level." Id., § 3084.5(d). An inmate was required to "submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Id., § 3084.6(c).

Each prison was required to have an "appeals coordinator" whose job was to "screen and categorize each appeal originating in their area for compliance with [the] regulations" prior to acceptance for review. Id., § 3084.3(a). The appeals coordinator could refuse to accept an appeal by "rejecting" it. Id., § 3084.3(c). An appeal could be "rejected" if the "[t]ime limits for submitting the appeal [were] exceeded and the appellant had the opportunity to file within the prescribed time constraints." Id.

VII.    Undisputed Material Facts

The facts in this case are largely undisputed. The parties agree that plaintiff pursued an appeal related to the claims in the complaint, and they agree on the timeline for that appeal as set forth below. Other facts have been identified from the documentary record, the accuracy of which is not in dispute.

At all times relevant to the complaint, plaintiff was a prisoner in custody at the California State Prison, Sacramento. Defendants' Undisputed Statement of Facts (DSUF) (ECF No. 75-1) ¶ 1; Response to DSUF (ECF No. 83-1) ¶ 1. On April 29, 2009, plaintiff submitted a first-level health care appeal related to his claims against defendants. DSUF ¶ 2; Response to DSUF ¶ 2.

The appeal requested that plaintiff "be intervi[ew]ed by C.M.O. Sahota or someone in a supervisory position, so that the proper chronos be placed in Medical file in order for [him] to be immediately transfer[r]ed to a Medical Facility CMF or CMC." ECF No. 1 at 28. On May 11, 2009, plaintiff was sent a notice informing him that his appeal had been assigned to the Health Care Appeals Office for a first-level response. DSUF ¶ 4; Response to DSUF ¶ 4.

On May 13, 2009, plaintiff was seen by NP Bakewell, who completed a Disability Placement Program Verification (CDC 1845); a chrono for a bottom bunk, wooden cane, and mobility vest; and requested a transfer for plaintiff. ECF No. 1 at 33, 36, 40-41. The CDC 1845 and chrono were approved on May 15, 2009, but it does not appear that they were placed in plaintiff's medical file until the July 24, 2009 response to his second level appeal. Id. at 36-37, 40-41.

A response to plaintiff's first level appeal was issued on June 22, 2009, and the appeal was returned to plaintiff on June 30, 2009. DSUF ¶¶ 5-6; Response to DSUF ¶¶ 5-6. During the interview, plaintiff requested an immediate transfer to a medical facility; daily physical therapy and a person to assist him once he arrived at the facility; and to be seen by an orthopedic specialist. DSUF ¶ 5; Response to DSUF ¶ 5. The first-level appeal was partially granted on the grounds that plaintiff had an 1845 mobility impairment request and a transfer request pending. Id. The requests for physical therapy and a referral to an orthopedic specialist were to be determined based on the outcome of the mobility impairment request. Id.

On July 12, 2009, plaintiff filed a second-level appeal that stated:

> Dissatisfied, it has been three months since the 1845 has been requested and nothing has been accomplished, furthermore as of 7-8-09 there is no record of an 1845 request in my medical file. I was told by my counselor CCI Lynch that as soon as an 1845 is approved I will be transfer[r]ed to a medical facility. I also have not been seen by the CMO as requested plus my ADA appeal was not processed. I have been beyond patient and all medical staff knows I do not belong here at SAC IV and have the power to have me moved immediately this is not a custody issue this is a medical issue. With every day that passes CMO Sahota her supervisor and all medical staff here are guilty of deliberate indifference, which is evident by the amount of time it is taking to get this transfer done and this appeal being assigned to Dr. A. Nangalama who cannot approve a medical transfer. See CA P.C. 6055, section 6102(d).

ECF No. 1 at 29, 38. A response to the second-level appeal was issued on July 24, 2009, and the appeal was returned to plaintiff on August 5, 2009. DSUF ¶¶ 9-10; Response to DSUF ¶¶ 9-10. The response partially granted plaintiff's appeal and found that plaintiff's chrono and CDC 1845 had been approved on May 15, 2009, but had never been placed in his medical file. ECF No. 1 at 35-37. The response stated that the documents would be located and placed in plaintiff's file that same day and that it was not necessary for plaintiff to see the Chief Medical Officer because his chrono and CDC 1845 had already been approved. Id. at 37.

On November 17, 2009, plaintiff submitted a third-level appeal that stated the following:

> I was initially satisfied with the partial granting of my medical appeal 1st level on 6-22-09 & 2nd level on 7-24-09 although the 1845 was done incorrectly, however had the 1845 been done over correctly and the CSR approved the medical transfer to CMF or CMC I would not be dissatisfied, so I am RE-INSTATING the appeal as if the action was denied 100% because NO ACTION TRANSPIRED WHATSOEVER, since the partial granting. On the 1845 section C # 3 was the correct box to check for my condition supported by my medical file and need for constant care and not just a disability cell. Pluus [sic] I was never put up for a medical transfer and no action at all transpired. ( see action requested on initial apeal [sic] I was denied an interview with C.M.O. Sahota, but granted medical transfer to CMF or CMC and nothing has been done which is the same as the appeal being denied 100%.

Id. at 29, 31. The third-level appeal was rejected as untimely on December 30, 2009. DSUF ¶ 12; Response to DSUF ¶ 12.

VIII. Discussion

A. Scope of Remand, and Applicability of *Harvey* after *Ross*

In reversing the dismissal for non-exhaustion of the claims at issue, the Ninth Circuit relied on Harvey v. Jordan, supra, and found that plaintiff's claim that he was satisfied with the partial grants of his first and second level appeals ended his obligation to exhaust his administrative appeals. ECF No. 50 at 2-3. In remanding the case, the Ninth Circuit gave defendants leave to contest whether plaintiff had actually been satisfied by the partial grants. Id. at 3. In other words, the Ninth Circuit found that plaintiff had exhausted his administrative remedies unless defendants could establish that he was not, in fact, satisfied.

In their motion for summary judgment, defendants ask the court to find not only that

plaintiff was not satisfied, but that his administrative remedies were not exhausted regardless of his satisfaction. ECF No. 75 at 9-12. Defendants are thus asking this court to depart from the Ninth Circuit's ruling on the applicability of Harvey.

The Court of Appeals' application of Harvey is the law of the case.

> The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition."

Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990) (alteration in original) (citations omitted). "Although . . . observance of the doctrine is discretionary, a prior decision should be followed unless (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." Hegler v. Borg, 50 F.3d 1472, 1475 (9th Cir. 1995) (citing United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995)).

Defendants' argument for diverging from the law of the case and exceeding the scope of the remand is that the Supreme Court's decision in Ross v. Blake, supra, is an intervening controlling authority. ECF No. 75 at 9-11. The decision in Ross precludes the creation of judge-made exceptions to statutory exhaustion provisions, and makes clear that the only exception to the PLRA's exhaustion requirement is the unavailability of administrative remedies. 136 S. Ct. at 1857-59. Defendants argue that Harvey, 605 F.3d at 685 (citation omitted), which states that "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies," establishes an exception to exhaustion that is based in futility, rather than unavailability, and is therefore no longer viable. ECF No. 75 at 9-11. The undersigned finds this argument unpersuasive.

In coming to its decision in Harvey, the Ninth Circuit did not at any time refer to satisfaction as an exception to exhaustion or state that satisfaction excuses exhaustion. Rather, the court held "that Harvey exhausted the administrative process when the prison officials

10

purported to grant relief that resolved his due process grievance to his satisfaction." Harvey, 605 F.3d at 686. In other words, once a satisfactory response had been provided, the administrative process was exhausted because the "complaint had been resolved." Id. at 865. This definition of exhaustion is consistent with the regulations, which stated that second-level appeals were "for review of appeals *denied* at the first level," third-level appeals were "for review of appeals *not resolved* at second level," and appeals in general were to be submitted "within 15 working days . . . of receiving an *unacceptable* lower level appeal decision." Cal. Code Regs. tit. 15, §§ 3084.5(c)-(d), 3084.6(c) (emphasis added). The language of the regulations clearly indicates that a satisfactory response resolved the appeal and high levels were only for inmates who were unhappy with the response they received. Accordingly, the undersigned finds that Harvey is still good law after Ross.

### B. Plaintiff's Satisfaction

In Harvey, the plaintiff filed a grievance alleging "that he was denied due process in connection with a disciplinary charge" and that "[p]rison officials failed to hold a hearing on the charge within the time allotted by prison rules." 605 F.3d at 683. The plaintiff then "filed a grievance complaining about the delay and requesting access to [a] videotape," which prison officials granted. Id. "The decision was labeled a partial grant of the grievance because [the plaintiff] had stated that in the alternative he requested that the charge be dismissed." Id. Five months later, the plaintiff complained that he still had not been given the opportunity to view the videotape or been given a hearing. Id. "The prison officials construed that complaint as an appeal of their prior decision, and rejected it as untimely." Id. The Ninth Circuit explained that "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Id. at 685. The subsequent complaint was deemed a "reminder" grievance that "cannot reasonably be construed as an appeal of the decision granting [the plaintiff] a hearing." Id.

In their motion for summary judgment, defendants argue that this case is distinguishable from Harvey because plaintiff was not granted any of the relief that he requested could not have been satisfied by any of the responses he received and because he admitted that he was

1  "dissatisfied." ECF No. 75 at 12.

2  With respect to defendants' argument that plaintiff could not have been satisfied because he specifically stated that he was "dissatisfied," they take plaintiff's statement out of context. Plaintiff stated that he was dissatisfied that it had been three months[2] since his CDC 1845 request had been completed, that there was no record of it in his file, and that he was told he would be transferred as soon as the request was approved. ECF No. 1 at 29, 38. This indicates not that plaintiff was unhappy with the promised relief, but with the failure to effectuate the promised relief. Plaintiff also expressed frustration at how long it was taking "to get this transfer done," as though the decision to transfer him had already been made. Id. at 38. Defendants' argument is further undercut by plaintiff's third-level appeal, which also expressed dissatisfaction with the amount of time it was taking to provide the promised relief and stated that plaintiff was "initially satisfied with the partial granting" of his first and second-level appeals, but that the failure to take any action effectively constituted a denial of the appeal. Id. at 29, 31. Considered in its proper context, plaintiff's statement of dissatisfaction does not mean that he was dissatisfied with the relief promised. Moreover, even if plaintiff had been dissatisfied by the first-level response, that statement of dissatisfaction would not necessarily carry over to the second-level response, as defendants essentially argue. Plaintiff was not locked into any dissatisfaction that he may have been feeling at the time he appealed the first-level response. Finally, defendants' offer no evidence to contradict plaintiff's claims that he was assured that he would be transferred[3] and their argument that he was not satisfied by those promises, just because he was unhappy they had not been delivered on months after the fact, does nothing to show he was dissatisfied at the time the promises were made or that he had reason to believe they would not be fulfilled.

With respect to the relief plaintiff sought, defendants' argument that he could not have been satisfied because he did not get the relief he specifically asked for is inherently faulty. This

---

[2] Though the appeal states it had been three months since the CDC 1845 request was made, it was only two months. The evaluation by NP Bakewell took place on May 13, 2009, and plaintiff submitted his second level appeal on July 12, 2009. ECF No. 1 at 29, 40-41.

[3] For example, they have not provided any contradictory declarations from the staff members plaintiff alleges provided such assurances.

12

argument assumes that plaintiff could only be satisfied by a grievance response if he got exactly what he asked for and that there was no possibility that an alternate form of relief could satisfy him. For instance, the first level appeal requested that plaintiff "be intervie[w]ed by C.M.O. Sahota or someone in a supervisory position, so that the proper chronos [could] be placed in [his] Medical file in order for [him] to be immediately transfer[r]ed to a Medical Facility CMF or CMC." ECF No. 1 at 28. Plaintiff clearly states that he wanted an interview with "C.M.O. Sahota or someone in a supervisory position" *for the purpose of obtaining chronos that would allow him to be transferred to a medical facility*. Id. He was not seeking an interview with defendant Sahota or a supervisor just to have an interview, but in order to obtain specific relief. Id. Plaintiff's second level appeal further indicates that the request to interview with defendant Sahota or a supervisor was due to plaintiff's belief that an interview with these individuals was necessary because they were the ones who had authority to approve his request. See id. at 38 (complaining that Sahota was delaying in getting the transfer completed and that the appeal was assigned to Dr. Nangalama who did not have authority to approve a medical transfer). Both the completed chrono and the response to plaintiff's second level appeal demonstrate that plaintiff's request for a chrono was granted.[4] Id. at 33, 36-37, 41. Since defendant Sahota was the one who approved plaintiff's chrono and CDC 1845[5] (id. at 37, 40-41), plaintiff was clearly not required to be seen by Sahota in order to obtain the relief he sought. Plaintiff's apparent misconception that a prior interview was necessary does not mean that he was necessarily dissatisfied with getting the desired chrono without an interview. Defendants' argument fails.

With respect to the portion of the request that sought a transfer, the first level response plaintiff received verified that a transfer request was pending. Id. at 33. Plaintiff's second level appeal then stated that he "was told by [his] counselor CCI Lynch that as soon as an 1845 is approved [he would] be transfer[r]ed to a medical facility" (id. at 29, 38) and the second level

---

[4] Had the documentation been properly placed into plaintiff's medical file, the first level appeal would have likely reflected the same, instead of incorrectly telling plaintiff that the request was still pending. ECF No. 1 at 33.

[5] Plaintiff's second level appeal states that he was told he would be transferred once the CDC 1845 was approved. ECF No. 1 at 29.

13

response stated that plaintiff's CDC 1845 had been approved (id. at 36). In sum, plaintiff was told that a transfer request was pending and that once his CDC 1845 was approved, he would get the transfer that he had requested. Then he was told that his CDC 1845 had already been approved, but for unknown reasons had not yet been placed in his file. Id. at 36-37. Nothing in either response disputes plaintiff's statement that he had been told that an approval of the CDC 1845 was synonymous with his transfer request being granted. Id. If anything, the acknowledgement that the CDC 1845 had been approved but not yet placed in plaintiff's file would have explained to plaintiff why his transfer had not yet taken place, rather than acting as a notification that his request had not actually been approved.

The evidence before the court demonstrates that regardless of whether plaintiff was actually approved for a transfer, the responses that he received indicated that he had been. Id. at 29, 31, 33, 36-38. To the extent defendants are arguing that plaintiff was never actually granted a transfer, they have not offered evidence of when prison officials clarified the misinformation and so are unable to show when plaintiff should have understood his appeal was denied and proceeded to submit his third level appeal.[6] Nor have they offered evidence showing that plaintiff could not have believed his request had been granted based upon the information he received. Furthermore, the fact that the transfer was not done "immediately" does not mean that plaintiff was not satisfied with the relief he was purportedly promised, namely that he would be transferred once his CDC 1845 was approved. See Coats v. Fox, 481 F. App'x 390, 391 (9th Cir. 2012) (prisoner's request to immediately begin Hepatitis C treatment was satisfied by response that he would receive treatment once "he reached a mainline facility and that he would be transferred as soon as possible").

With respect to plaintiff's requests to receive daily physical therapy, someone to assist him with his daily activities, and a referral to an orthopedic specialist, which he made during the appeal interview, these requests were not denied outright. Id. at 33. The response states that they

---

[6] The court notes that plaintiff's third level appeal indicates that at some point he was notified that he would not be transferred to a medical facility, but that he believed it was due to his paperwork being filled out incorrectly. ECF No. 1 at 29, 31.

would be determined upon the outcome of the CDC 1845 (id.), which was approved (id. at 36). Moreover, as defendants point out, plaintiff's request for a transfer was the "gravamen of his claims" (ECF No. 75 at 12) and, as discussed above, the court finds that plaintiff was led to believe that request had been granted. The fact that his requests for physical therapy, an assistant, and a referral were not explicitly granted does not mean that plaintiff was not satisfied by the promise of a transfer and further evaluation of those requests, and defendants offer no evidence that he was not satisfied.

The court also notes that plaintiff requested physical therapy and an assistant *to follow* his transfer to a medical facility; access to these services was a substantial basis for his request to be transferred. ECF No. 1 at 30, 33. Since these were the main reasons plaintiff was requesting to be transferred to a medical facility, it stands to reason that he would expect to obtain these services once he was transferred regardless of whether the requests were explicitly granted by the appeal. The court further notes that the approved CDC 1845 specifies that plaintiff required assistance with some of his daily living activities (id. at 40), indicating that the request for assistance had in fact been granted.

For all these reasons, the court finds that (1) plaintiff was satisfied by the relief that he was led to believe he had been granted, and (2) that to the extent he had not actually been granted the relief he sought, his delay in proceeding to his third level appeal was excused by the misunderstanding perpetuated by the responses he received from prison officials. See Nunez v Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (exhaustion excused where prisoner was unable to timely proceed to next level because the warden mistakenly told him that he required a copy of a policy to proceed and no one corrected the mistake while prisoner was attempting to obtain it). Because plaintiff was satisfied with the responses to his first and second level appeals, he exhausted his administrative remedies and defendants' motion for summary judgment should be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 75) be denied.

1     These findings and recommendations are submitted to the United States District Judge
2 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
3 after being served with these findings and recommendations, any party may file written
4 objections with the court and serve a copy on all parties.  Such a document should be captioned
5 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
6 objections shall be served and filed within fourteen days after service of the objections.  The
7 parties are advised that failure to file objections within the specified time may waive the right to
8 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 11, 2017

                                                           */s/ Allison Claire*
                                                       ALLISON CLAIRE
                                                       UNITED STATES MAGISTRATE JUDGE